**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

FILED JULY 3, 2007

IN RE FORFEITURE OF $180,975

_____

PEOPLE OF THE STATE OF MICHIGAN
        Plaintiff-Appellee,

v                                  No. 127983

$180,975 IN UNITED STATES
CURRENCY,
        Defendant,
and
TAMIKA SHANTE SMITH,
        Claimant-Appellant,
and
TODD FITZGERALD FLETCHER,
        Claimant.

_____

BEFORE THE ENTIRE BENCH

WEAVER, J.

In this case we consider the proper application of the exclusionary rule in a civil forfeiture proceeding in which the property subject to forfeiture has been illegally seized. We further consider whether *In re Forfeiture of United States Currency,* 166 Mich App 81; 420 NW2d 131 (1988), was correctly decided. In deciding these questions, we first hold that under *Immigration & Naturalization*

*Service v Lopez-Mendoza,* 468 US 1032; 104 S Ct 3479; 82 L Ed 2d 778 (1984), illegally seized property is not immune from forfeiture. We also agree with the holding in *United States v $639,558,* 293 US App DC 384, 387; 955 F2d 712 (1992), that property subject to forfeiture that was illegally seized "is not 'excluded' from the proceeding entirely." Instead, the illegally seized property "may be offered into evidence for the limited purpose of establishing its existence, and the court's *in rem* jurisdiction over it." *Id.*

Because we find that the exclusionary rule was never meant to preclude illegally seized property from a subsequent civil forfeiture proceeding involving that property, we hold that, in accord with *In re Forfeiture of United States Currency* and MCL 333.7521, as long as the order of forfeiture can be established by a preponderance of evidence untainted by the illegal search and seizure, the forfeiture is valid.

For the reasons summarized by the Court of Appeals in its decision affirming the circuit court's judgment and order, we agree with the Court of Appeals that the circuit court did not clearly err in finding that, although the money was illegally seized, there was a preponderance of untainted evidence to support a finding of civil forfeiture pursuant to MCL 333.7521(1)(f).

Accordingly, we affirm the Court of Appeals judgment and we further conclude that the Court of Appeals in *In re Forfeiture of United States Currency* reached the correct result.

FACTS

Claimant Tamika S. Smith was driving west on I-94 when she was stopped for speeding by Michigan State Trooper James Lass. Smith was traveling with her two small children in a rental car rented by her adult male passenger, claimant Todd F. Fletcher. Trooper Lass obtained photo identification in the form of a driver's license from both Smith and Fletcher and checked both licenses for outstanding warrants. Lass discovered that Smith's license had been suspended, and that Fletcher's license was valid, but that Fletcher had been identified as an individual to whom "officer safety caution" applied. After checking Fletcher's criminal history, Trooper Lass learned that Fletcher had been arrested previously for possession of cocaine and for weapons offenses. On the basis of this information, Trooper Lass returned to the rental car and apparently advised Smith that he was going to search the trunk of the rental car, in which Trooper Lass subsequently discovered a backpack containing $180,975 in cash.[1] Smith was cited for speeding and driving on a suspended license.[2]

The state filed a complaint for forfeiture of the currency discovered in the backpack pursuant to MCL 333.7521(1)(f). Before the forfeiture proceeding,

---

[1] Because it was not clear that Smith consented to the search of the trunk, after an evidentiary hearing, the trial court granted Smith's motion to suppress evidence of the backpack and its contents on the ground that the seizure was illegal under the Fourth Amendment, US Const, Am IV; Const 1963, art 1, § 11.

[2] No criminal charges arising out of this incident were ever filed against Smith.

claimant Smith filed a motion to suppress evidence of the backpack and its contents on the basis that the evidence was illegally seized in violation of the Fourth Amendment because Smith did not consent to the search of the rental car. The circuit court agreed with Smith, determined that there was no probable cause to search the trunk of the car, and granted Smith's motion to suppress.

While the circuit court ruled that the $180,975 in currency was suppressed, the court allowed the prosecutor to introduce other evidence during the forfeiture proceeding. Specifically, the prosecutor presented evidence to show that Smith was a drug courier and that the $180,975 seized by Trooper Lass had been intended for the purchase of illegal drugs. The prosecutor submitted evidence that in the three months before Smith was stopped for speeding, Smith had rented several different rental cars at least four times for three days each time; that she had driven for several hundred miles on each occasion, but could not recall where she had driven; and that Smith's tax records indicated that she generally earned between $4,000 and $5,000 a year and had no income in 2002, the year when she was stopped for speeding.

In addition, an expert in the area of illegal drug trafficking testified that I-94, the highway on which Smith was driving when she was stopped, is a recognized major drug corridor between Detroit and Chicago, with large amounts of cash found in rental cars traveling west, and large amounts of illegal drugs recovered in rental cars going east. The circuit court further found that Smith's explanation of how she came to be traveling with $180,975 in cash was neither

consistent nor credible. Ultimately, the court ruled in favor of forfeiture, concluding that, even when the illegally seized evidence is excluded, the prosecutor established by a preponderance of the evidence that the money was intended to buy illicit drugs.

Claimant Smith appealed, and the Court of Appeals, finding no clear error, affirmed the forfeiture.[3] Smith sought leave to appeal the Court of Appeals decision, and we granted leave to appeal to consider "(1) the proper application of the exclusionary rule in a forfeiture proceeding in which the property subject to forfeiture has been illegally seized, and (2) whether *In re Forfeiture of United States Currency,* 166 Mich App 81 (1988), was correctly decided."[4]

STANDARD OF REVIEW

This Court reviews de novo questions of law. *Cowles v Bank West,* 476 Mich 1, 13; 719 NW2d 94 (2006). The proper application of the exclusionary rule in a civil forfeiture proceeding is a question of law subject to review de novo. *People v Stevens (After Remand),* 460 Mich 626, 631; 597 NW2d 53 (1999). A trial court's decision in a forfeiture proceeding will not be overturned unless it is clearly erroneous.[5] A finding is clearly erroneous where, although there is

---

[3] *In re Forfeiture of $180,975,* unpublished memorandum opinion of the Court of Appeals, issued December 28, 2004 (Docket No. 249699).

[4] *In re Forfeiture of $180,975,* 475 Mich 909 (2006).

[5] *People v Burrell*, 417 Mich 439, 448; 339 NW2d 403 (1983); *People v United States Currency*, 148 Mich App 326, 329; 383 NW2d 633 (1986).

5

evidence to support it, the reviewing court is firmly convinced that a mistake has been made.[6]

## ANALYSIS

### Application of the Exclusionary Rule to Civil Forfeiture under MCL 333.7521

A forfeiture proceeding pursuant to MCL 333.7521(1)(f) is a proceeding *in rem*. As such, the item that is the subject of the forfeiture proceeding is the "offender" and the "claimant" is the owner, or perhaps only a possessor, of the item in question. As the United States Supreme Court explained in *Various Items of Personal Property v United States*:[7]

> It is the property which is proceeded against, and, by resort to a legal fiction, held guilty and condemned as though it were conscious instead of inanimate and insentient. In a criminal prosecution it is the wrongdoer in person who is proceeded against, convicted and punished. The forfeiture is no part of the punishment for the criminal offense. *Origet v United States*, 125 U.S. 240, 245-247; 8 S Ct 846 (1888).

In *One 1958 Plymouth Sedan v Pennsylvania,* 380 US 693; 85 S Ct 1246; 14 L Ed 2d 170 (1965), the United States Supreme Court held that the exclusionary rule applied to forfeiture proceedings because forfeiture proceedings are quasi-criminal in nature. In this case, the prosecutor has raised questions about the continuing viability of *One 1958 Plymouth Sedan.* However, the prosecutor has not appealed the suppression order and, therefore, this issue is not before us.

---

[6] *Kitchen v Kitchen,* 465 Mich 654, 661-662; 641 NW2d 245 (2002).

[7] 282 US 577, 581; 51 S Ct 282; 75 L Ed 558 (1931).

6

Nevertheless, while *One 1958 Plymouth Sedan* has not been overruled and, thus, is still applicable, several subsequently decided cases indicate that the underpinnings of *One 1958 Plymouth Sedan* have been weakened.

For example, when the United States Supreme Court was presented with the question whether to exclude evidence from a federal civil tax proceeding on the basis that the evidence was obtained by a state law-enforcement officer relying in good faith on a defective warrant, the Court declined to extend the exclusionary rule to the federal proceeding.[8]  In so holding, the Court recognized that the primary purpose of the exclusionary rule, which is a judicially created remedy, is to deter future unlawful police conduct.  As such, courts impose the exclusionary rule in criminal proceedings to deter police officers from making future illegal searches and seizures.   Thus, the United States Supreme Court recognized that to further extend the exclusionary rule would not be prudent given that "the additional marginal deterrence provided by forbidding a different sovereign from using the evidence in a civil proceeding surely does not outweigh the cost to society of extending the rule to that situation."[9]

---

[8] *United States v Janis*, 428 US 433, 454; 96 S Ct 3021; 49 L Ed 2d 1046 (1976).

[9] *Id.* at 453-454.  See also *Lopez-Mendoza, supra at*  1041-1042 (during civil deportation proceeding, court declined to apply exclusionary rule to bar admission of illegally seized evidence); *Pennsylvania Bd of Probation & Parole v Scott,* 524 US 357, 366-367; 118 S Ct 2014; 141 L Ed 2d 344 (1998) (exclusionary rule does not bar admission of evidence at parole revocation hearing even though evidence obtained in violation of Fourth Amendment).

In *Pennsylvania Bd of Probation & Parole v Scott,* 524 US 357, 363; 118 S Ct 2014; 141 L Ed 2d 344 (1988), the United States Supreme Court explained that it has "repeatedly declined to extend the exclusionary rule to proceedings other than criminal trials." Additionally, the Supreme Court has declined to apply the exclusionary rule when the proceedings fall outside the offending officer's primary focus.[10] The Court has "never suggested that the exclusionary rule must apply in every circumstance in which it might provide marginal deterrence."[11] The deterrent function is strongest where the unlawful conduct would result in a criminal penalty.[12] Extending the rule beyond the officer's primary zone of interest would have, at most, only an incremental deterrent effect.[13]

As acknowledged by the Court of Appeals in *In re Forfeiture of United States Currency,* "the Michigan forfeiture statute [MCL 333.7521(1)(f)] closely parallels the analogous federal statute, 21 USC 881(a)(6)."[14]     MCL

---

[10] See *Janis, supra, Lopez-Mendoza, supra,* and *Scott, supra.*

[11] *Scott, supra* at 368.

[12] See *id.*

[13] *Id.*

[14] 21 USC 881(a)(6) provides:

The following shall be subject to forfeiture to the United States and no property right shall exist in them:

* * *

(continued…)

333.7521(1)(f)[15] is contained within the controlled substances article of the Public Health Code. In summary, § 7521(1)(f) provides for the forfeiture of "any thing of value that is furnished or intended to be furnished in exchange for a controlled

---

(…continued)

(6) All monies, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all monies, negotiable instruments and securities used or intended to be used to facilitate any violation of this subchapter, except that no property shall be forfeited under this paragraph to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

[15] MCL 333.7521(1)(f) states:

The following property is subject to forfeiture:

* * *

(f) Any thing of value that is furnished or intended to be furnished in exchange for a controlled substance, an imitation controlled substance, or other drug in violation of this article that is traceable to an exchange for a controlled substance, an imitation controlled substance, or other drug in violation of this article or that is used or intended to be used to facilitate any violation of this article including, but not limited to, money, negotiable instruments, or securities. To the extent of the interest of an owner, a thing of value is not subject to forfeiture under this subdivision by reason of any act or omission that is established by the owner of the item to have been committed or omitted without the owner's knowledge or consent. Any money that is found in close proximity to any property that is subject to forfeiture under subdivision (a), (b), (c), (d), or (e) is presumed to be subject to forfeiture under this subdivision. This presumption may be rebutted by clear and convincing evidence.

substance . . . in violation of this article [or] that is traceable to an exchange for a controlled substance, . . . or that is used or intended to be used to facilitate any violation of this article . . . ."[16] Forfeiture proceedings under the administrative section of the Michigan Public Health Code are not within the offending police officer's primary zone of interest. The primary goal of a police officer is to collect evidence to be used to convict a defendant in a criminal proceeding. The police officer's main focus is not on obtaining evidence for a civil forfeiture action.

We further note, as amicus curiae, the Prosecuting Attorneys Association of Michigan (PAAM), correctly observes, that there is a distinction between civil and criminal forfeiture proceedings. As mentioned in *Various Items of Personal Property, supra* at 580-581:

> At common law, in many cases, the right of forfeiture did not attach until the offending person had been convicted and the record of conviction produced. But that doctrine did not apply, as this court in an early case pointed out, where the right of forfeiture was "created by statute, *in rem*, cognisable on the revenue side of the exchequer. The thing is here primarily considered as the offender, or rather the offense is attached primarily to the thing; and this, whether the offense be *malum prohibitum*, or *malum in se*." *The Palmyra*, [25 US (12 Wheat) 1, 14; 6 L Ed 531 (1827)].

There is an additional distinction between civil and criminal forfeitures, namely that the latter are punitive in nature, while the former are not. Section

---

[16] *Id.* MCL 333.7104(2) provides, "'Controlled substance' means a drug, substance, or immediate precursor included in schedules 1 to 5 of part 72." Or, put more simply, a "controlled substance" is an illegal drug.

7521(1)(f) is not a criminal statute. There are no penalties or fines associated with a violation of this section. Further, there are no provisions for inquiry into the guilt or innocence of the owner or possessor of the item subject to forfeiture. Instead, the intent of civil forfeiture statutes like § 7521(1)(f) is to remove from circulation all cash, property, and contraband used to further drug trafficking. Indeed, in *Bennis v Michigan,*[17] the United States Supreme Court affirmed this Court's decision that forfeiture under Michigan's nuisance abatement statute[18] was appropriate even when the joint owner of the forfeited vehicle was innocent. In so holding, the United States Supreme Court stated:

> [Petitioner] claims she was entitled to contest the abatement by showing she did not know her husband would use it to violate Michigan's indecency law. But a long and unbroken line of cases holds that an owner's interest in property may be forfeited by reason of the use to which the property is put *even though the owner did not know that it was to be put to such use*. [*Id.* at 446 (emphasis added).]

Given the distinctions between a criminal proceeding against a defendant accused of a crime and a civil forfeiture against the offending object, we decline to

---

[17] 516 US 442; 116 S Ct 994; 134 L Ed 2d 68 (1996).

[18] MCL 600.3801 states:

> Any building, vehicle, boat, aircraft, or place used for the purpose of lewdness, assignation or prostitution or gambling, or used by, or kept for the use of prostitutes or other disorderly persons, . . . is declared a nuisance, . . . and all . . . nuisances shall be enjoined and abated as provided in this act and as provided in the court rules. Any person or his or her servant, agent, or employee who owns, leases, conducts, or maintains any building, vehicle, or place used for any of the purposes or acts set forth in this section is guilty of a nuisance.

11

rule that the exclusionary rule ever acts as a complete bar to bringing a forfeiture proceeding against an object that has been illegally seized. We instead examine the approach adopted by the Court of Appeals in *In re Forfeiture of United States Currency* and consider whether that decision was correct.

IN RE FORFEITURE OF UNITED STATES CURRENCY

The Court of Appeals affirmed the forfeiture of the $180,975 in currency on the basis of *In re Forfeiture of United States Currency*. Like claimant Smith herein, the petitioner there, Kenneth Williams, moved to suppress evidence of controlled substances and $30,632.41 in cash illegally seized from his home by the police. The trial court granted Williams's motion to suppress and all criminal charges were dismissed. Thereafter, the city of Lansing brought a forfeiture proceeding against the seized items and the trial court ruled in the city's favor. Williams appealed, arguing that the trial court erred because illegally seized evidence could not be the subject of a subsequent forfeiture action. The Court of Appeals, when faced with the issue now before us, observed:

> Michigan courts have not decided the specific question whether property seized pursuant to a search warrant which is subsequently held invalid may still be subject to forfeiture under the Michigan forfeiture statute. However, this Court has stated that property and monies described in the analogous federal statute are subject to forfeiture even where the seizure of the property subject to the forfeiture is subsequently found to be unlawful. *Michigan State Police v 33d District Court*, 138 Mich App 390, 395; 360 NW2d 196 (1984). [*In re Forfeiture of United States Currency*, 166 Mich App at 87-88.]

12

Williams contended, as does claimant Smith here, that *One 1958 Plymouth Sedan* bars a forfeiture proceeding when the subject of the forfeiture is illegally seized property. The Court of Appeals in *In re Forfeiture of United States Currency,* 166 Mich App at 88-89, disagreed:

> *One 1958 Plymouth Sedan* holds that evidence and property illegally seized cannot be used in a forfeiture proceeding, and not that the illegally seized property cannot be forfeited.

> The decision in *United States v "Monkey" a Fishing Vessel,* 725 F2d 1007, 1012 (CA 5, 1984), addressing forfeiture of illegally seized property under federal law, is instructive:

> "This court recently decided that

> 'even if the seizure were illegal, it would not bar the government's right to claim the vehicle through forfeiture proceedings. Improper seizure does not jeopardize the government's right to secure forfeiture if the probable cause to seize the vehicle can be supported with untainted evidence. *United States v Eighty-Eight Thousand, Five Hundred Dollars,* 671 F2d 293, 297-298 (CA 8, 1982); *United States v One 1975 Pontiac Lemans*, 621 F2d 444, 450-451 (CA 1, 1980); *United States v One Harley Davidson Motorcycle,* 508 F2d 351, 351-352 (CA 9, 1974). This position is not contrary to *One 1958 Plymouth Sedan v Pennsylvania,* 380 US 693; 85 S Ct 1246; 14 L Ed 2d 170 (1965). That case holds that an object illegally seized cannot in any way be used either as evidence or as the basis for jurisdiction. Therefore, evidence derived from a search in violation of the fourth amendment must be excluded at a forfeiture proceeding. In the case at bar, all evidence of probable cause was developed independent of the seizure of the vehicle. Thus, even if a warrant were required, the failure to secure it would not bar the forfeiture of the vehicle.' [*United States v One 1978 Mercedes Benz, 4-Door Sedan,* 711 F2d 1297 (CA 5, 1983).]"

> We hold that illegally seized property is forfeitable under MCL 333.7521; MSA 14.15(7521), so long as the probable cause for its seizure can be supported with untainted evidence and any illegally seized property is excluded from the forfeiture proceeding. In this case, the illegally seized articles were never introduced into evidence. Thus, the circuit court complied with an interpretation of

13

Michigan's forfeiture statute which parallels the federal statute and is consistent with this opinion, despite its erroneous assertion as to the holding of *One 1958 Plymouth Sedan*.

We first note that the Court of Appeals panel in the instant case erred in relying on the erroneous standard of proof cited in *In re Forfeiture of United States Currency* when the panel held that "probable cause supported by untainted evidence existed for the seizure." *In re Forfeiture of $180,975,* slip op at 2. The correct burden of proof is a *preponderance of the evidence,* not *probable cause.*[19]

We agree with the Court of Appeals conclusion that while *One 1958 Plymouth Sedan* holds that illegally seized evidence and property cannot be used in a subsequent forfeiture proceeding, *One 1958 Plymouth Sedan* does not state that illegally seized property cannot be forfeited. We disagree, however, with the Court of Appeals inclusion in its analysis of the questionable conclusion made by the Fifth Circuit Court of Appeals that *One 1958 Plymouth Sedan* holds that "'an object illegally seized *cannot in any way* be used either as evidence or as the basis for jurisdiction.'"[20]

---

[19] *People v United States Currency,* 158 Mich App 126, 130; 404 NW 2d 634 (1986) ("[T]he party asserting the claim has the burden of proving his case by a preponderance of the evidence. See *Blue Cross & Blue Shield of Michigan v Governor,* 422 Mich 1, 89; 367 NW 2d 1 (1985), reh den 422 Mich 1206 (1985), app dis 474 US [805]; 106 S Ct 40; 88 L Ed 2d 33 (1985).").

[20] *In re Forfeiture of United States Currency,* 166 Mich App at 89, quoting *United States v One 1978 Mercedes Benz, 4-Door Sedan*, 711 F2d 1297, 1303 (CA 5, 1983) (emphasis added).

Although *One 1958 Plymouth Sedan* characterized the forfeiture proceeding in that case as being "quasi-criminal" and requires application of the exclusionary rule to forfeiture proceedings, neither *One 1958 Plymouth Sedan* nor the exclusionary rule prevents the mention of the illegally seized property that is the subject of the forfeiture proceeding. In fact, in *Lopez-Mendoza, supra* at 1039-1040, the United States Supreme Court stated that "[t]he 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred. A similar rule applies in forfeiture proceedings . . . ." The United States Court of Appeals for the District of Columbia Circuit properly interpreted *One 1958 Plymouth Sedan* and *Lopez Mendoza* in *United States v $639,558*:[21]

> When illegally seized property is itself the "defendant" in the forfeiture proceeding, it may not be "relied upon to sustain a forfeiture," *Plymouth Sedan,* 380 U.S. at 698, but it is not "excluded" from the proceeding entirely. Such property may be offered into evidence for the limited purpose of establishing its existence, and the court's *in rem* jurisdiction over it. This, we think, is the import of the Second Circuit's recent statement that with respect to unlawfully obtained property that is the subject of the forfeiture suit, "the property itself cannot be excluded from the forfeiture action," *United States v. $ 37,780 in U.S. Currency,* 920 F. 2d 159 at 163 (2d Cir. 1990). In other words, as the Supreme Court suggested in *INS v. Lopez-Mendoza,* 468 U.S. 1032 at 1041, 104 S. Ct. 3479, 82 L.Ed.2d 778 (1984)*,* the fact that the defendant property had been seized after an illegal search does not "immunize" it from forfeiture, any more than a defendant illegally arrested is immunized

---

[21] 293 US App DC at 387 n 5.

15

from prosecution. *United States v. Crews,* 445 U.S. 463 at 474, 100 S Ct 1244, 63 L.Ed.2d 537 (1980). See, e.g., *United States v. One (1) 1987 Mercury Marquis,* 909 F.2d 167 at 169 (6th Cir. 1990); *United States v. U.S. Currency $31,828,* 760 F.2d 228 at 230-31 (8th Cir. 1985). Thus, other evidence, legally obtained, may be introduced to establish that the property should be forfeited to the government. *United States v. One (1) 1971 Harley-Davidson Motorcycle,* 508 F.2d 351 (9th Cir. 1974). In this case the government apparently had no such other evidence and, for that reason, the district court dismissed the action after ordering the cash (and the keys and ledgers) suppressed.

We agree with the conclusions in *United States v $639,558* that (1) the illegal seizure of property does not immunize it from forfeiture, and (2) illegally seized property that is the subject, or "res," of the forfeiture proceeding may be offered into evidence for the limited purpose of establishing its existence and the court's *in rem* jurisdiction over it. We therefore find that the Court of Appeals in *In re Forfeiture of United States Currency* reached the correct result. We further hold that illegally seized property is forfeitable under MCL 333.7521 as long as the forfeiture can be supported by a preponderance of untainted evidence.

While illegally seized evidence itself is physically excluded, it is not entirely excluded from the forfeiture proceeding However, questions concerning this excluded evidence should be limited to the circumstances surrounding its existence. For example, in the case of illegally seized cash, the state should not be permitted to exploit the search by asking how the money was packaged, or

whether evidence of drugs was detected on the money. In addition, any other

legally obtained evidence may be introduced to support the forfeiture.[22]

Justice Markman, in dissent, questions the propriety of permitting the

consideration of the "surrounding circumstances" of illegally seized property

during a forfeiture proceeding.[23]   Further, the dissent apparently would immunize

---

[22] The dissent by Justice Markman argues that "[b]ecause suppressed evidence is inadmissible for broader purposes," a court may not consider the surrounding circumstances or implications of any suppressed evidence. *Post* at 9. In support of this contention, the dissent cites *People v LoCicero (After Remand)*, 453 Mich 496, 508; 556 NW2d 498 (1996), a criminal proceeding in which this Court held that "[t]he exclusionary rule forbids the use of direct and indirect evidence acquired from governmental misconduct, such as evidence from an illegal police search." Yet the issue in *LoCicero* was whether a police officer had reasonable suspicion under *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968), to stop defendant's vehicle. Because we concluded that the officer's observations did not amount to a reasonable suspicion and therefore the stop violated the Fourth Amendment, we applied the exclusionary rule to suppress the illegally obtained evidence. *LoCicero* is thus distinguishable in that it does not address the application of the exclusionary rule in a civil forfeiture proceeding in which the illegally seized property is the "defendant." Further, *LoCicero* does not hold that the identity of the defendant or the circumstances surrounding the existence of the defendant may not be considered when the defendant is illegally seized.

[23] The dissent implies that in determining that there was insufficient independent evidence to support a forfeiture, the District of Columbia Circuit Court of Appeals in *United States v $639,558* did not permit the consideration of the "surrounding circumstances" of the illegally seized money; however, the circuit court, in fact, did not even rule on this issue because the prosecutor had already conceded that he could not proceed without the suppressed evidence. *Id.* at 387.

In addition, the dissent asserts that the Fifth Circuit Court of Appeals in *United States v "Monkey"* also did not rely on the "surrounding circumstances" concerning suppressed evidence, "but rather held that a forfeiture was supported *in spite of* the suppression," *post* at 12 (emphasis in original), because of independent evidence. Again, the dissent mischaracterizes the actual holding: the Fifth Circuit

(continued…)

17

the illegally seized property such that a court could not consider *anything* regarding that property, even the presence of a large sum of money, *post* at 15-16. Yet this reasoning has been rejected.  In *United States v $493,850 in United States Currency,*[24] the government sought to forfeit illegally seized cash, but the claimant asserted that the cash could not even be mentioned during the forfeiture proceeding and that the illegally seized cash should be treated as if it were a "widget."  The United States District Court for Arizona disagreed, holding:

> However, the Court does not believe that exclusion of the cash means the Court must consider the defendant cash as a "widget." The Court believes it can still take notice of the fact that the defendant is cash. This is obviously stated in the caption of the case. Perhaps the denominations making up the amount and the actual money itself cannot be put into evidence. However, there is no way for the Government to show that a "widget" is the product of a drug transaction and, therefore, the Court does not believe it has to disregard the fact that one of the defendants is cash.[25]

(…continued)
Court of Appeals did not rule on the question whether it could properly consider the "surrounding circumstances" of the suppressed evidence because it did not need to even reach that issue in order to decide the case.

Thus, contrary to the dissent's assertions, neither *United States v $639,558*, nor *United States v "Monkey,"* stands for the proposition that the circumstances surrounding the illegally seized evidence may not be considered to support a forfeiture.  And, in fact, the dissent fails to cite *even one case* supporting its contention that a court may not consider the implications and circumstances surrounding evidence that is the subject of forfeiture and that has been illegally seized.

[24] 2006 LEXIS 2370, 14 (D Ariz, January 23, 2006).

[25] *Id.* at 15-16.

Because a basic purpose of a drug forfeiture proceeding is to establish that the item subject to forfeiture (here the $180,975 in cash) is connected to drug activity, a court cannot be forced to pretend that the cash does not exist. Nor must the court turn a blind eye to the conclusions one reaches when considering all of the circumstances surrounding its existence and its implications. Rather, we apply a commonsense approach to drug forfeiture hearings in which the item subject to forfeiture has been excluded from evidence:[26] while the court may not consider the specific physical characteristics of the item itself, the court can consider evidence presented in relation to the fact of the item's existence, such as the fact that claimant's testimony about the money itself is questionable. This approach in no way redefines the judicially created exclusionary rule. Here, the court can consider the reliability of the claimant's testimony concerning the money's origin, its existence in her rental car, its intended purpose, the amount of the money in relation to her reported income, the fact that she was traveling along a known drug corridor in a rental car, and that she had rented several cars in the preceding weeks, and any other circumstantial factors not specifically related to the physical characteristics of the money.

---

[26] The Eleventh Circuit Court of Appeals has taken a commonsense approach in determining whether there is probable cause to establish forfeiture: "Finally, and most importantly we do not take an academic or theoretical approach. Instead we eschew clinical detachment and use a common sense view to the realities of normal life." *United States v $242,484 in United States Currency,* 389 F3d 1149, 1167 (CA 11, 2004).

Our conclusion is supported by *United States v $22,287 in United States Currency*,[27] in which the United States District Court for the Eastern District of Michigan held that the circumstances surrounding illegally seized cash may be considered. The court held that although all the evidence seized during an illegal drug raid ($22,287 in currency, a bag of heroin, two scales and some firearms) was excluded, the forfeiture was still supported on the basis of a conversation between a police officer and a purported drug seller, as well as certain circumstances concerning the money. Specifically, the court noted that $22,287 was "an unusually large amount of cash for any individual to have on hand" and, further, that the amount of cash was "very close to the price of 'nineteen five' ($19,500.00) noted by Johnny [purported drug seller] as the cost of an 'lb' (pound of heroin)."[28] These are precisely the type of factors regarding the existence of the cash that the dissent would preclude from consideration.[29]

---

[27] 520 F Supp 675, 680 (ED Mich, 1981), aff'd 709 F2d 442 (CA 6, 1983).

[28] *Id.*

[29] The dissent, *post* at 10, claims that with the exception of our citation of *United States v $22,287, supra,* the forfeiture cases cited in our opinion are not in dispute and are "irrelevant." Yet we note that while the dissent may not dispute the propositions for which these cases are cited, the parties do. Specifically, while the prosecutor has asserted that illegally seized evidence may be introduced into evidence for *any purpose*, some of the "irrelevant" cases we cite reject this assertion and establish that illegally seized evidence may only be offered for the purpose of establishing its existence and court's jurisdiction over such evidence. See pp 14-17 of this opinion, discussing *One 1958 Plymouth, supra; Lopez-Mendoza, supra;* and *United States v $639,558, supra.*

20

EVIDENCE SUPPORTING FORFEITURE

Turning now to the circuit court's forfeiture hearing, we note that the circuit court correctly excluded evidence of the illegally seized backpack and its contents. Our next inquiry is whether there was a preponderance of *untainted* evidence to support the forfeiture. First, with respect to the $180,975 in cash found in the claimant's rental car, while the cash itself was excluded from evidence, the trial court could properly consider the implications of the presence of such a large amount of cash in the vehicle. The Sixth Circuit Court of Appeals has held that "carrying a large sum of cash is strong evidence of some relationship with illegal drugs."[30] Here, as noted in the circuit court's findings, the ruling of drug forfeiture was based in part on the presence of the $180,975 in currency:

> Well, what do we have here? We have a very large amount of money. It is not illegal to have it. It is unheard [sic] of, but it is mighty unusual to have One Hundred Eighty Thousand Dollars ($180,000) in cash being transported in this vehicle.

The circuit court further noted:

---

[30] *United States v $67,220 in United States Currency,* 957 F2d 280, 285 (CA 6, 1992), citing *United States v $ 215,300,* 882 F2d 417, 419 (CA 9, 1989). See also *United States v $87,375 in United States Currency,* 727 F Supp 155, 161 (D NJ, 1989) ("The fact of an extremely large amount of money by itself constitutes strong evidence that the money was furnished in exchange for illegal drugs. *United States v $ 2,500,* 689 F 2d 10, 16 (CA 2, 1982)."); *United States v $84,615 in United States Currency,* 379 F3d 496, 501-502 (2004) ("[P]ossession of a large amount of cash (here, nearly $ 85,000) is strong evidence that the cash is connected with drug activity."); *United States v $433,980 in United States Currency*, 473 F Supp 2d 685, 691 (2007) ("the additional circumstantial proof discussed above (particularly the large amount of the currency as well as its

(continued…)

It is also a little unusual and I guess it would create in one's mind a suspicion, which isn't sufficient, but it is a suspicion when the person transporting it [cash] and driving the vehicle has no apparent means to produce that kind of income or have that kind of money. And Exhibit 3 tells us that her [claimant's] income peaked I think at one year at Fourteen Thousand (14,000) and usually it is Four to Five Thousand Dollars ($5,000) a year. So there is no good explanation why she would have it.

The circuit court's suspicion about the claimant's ability to produce such a large amount of income, given the evidence of claimant's negligible taxable earnings, is also a factor that federal courts have used in concluding that there is sufficient evidence to support a drug forfeiture. For example, in *United States v $174,206 in United States Currency,* 320 F3d 658, 662 (CA 6, 2003), the Sixth Circuit Court of Appeals held that evidence of the claimants' lack of legitimate income, by itself, was sufficient evidence to support the forfeiture of cash:

The United States has shown by a preponderance of the evidence that the property [$174,206 in cash] is traceable to the drug offenses and is thus subject to forfeiture under 21 U.S.C. § 881(a)(6). The evidence before the district court showed that the Claimants' legitimate income was insufficient to explain the large amount of currency found in their possession. State tax records showed that Richard had filed no income tax returns from 1994 through 1999, and that Love had filed no income tax returns from 1994 through 1997. Love's 1998 and 1999 returns showed income of $ 15,147.00 and $ 15,995.00, respectively. In sum, then, the United States showed that the Claimants had a total of $31,142 in legitimate income between 1994 and 1999. The Claimants' safe deposit boxes contained $174,206.00. This evidence of legitimate income that is insufficient to explain the large amount of property seized, unrebutted by any evidence pointing to any other source of

(…continued)
unusual packaging) persuades the Court that it is more likely than not that the $433,980 was substantially related to a drug offense . . . ." ).

22

legitimate income or any evidence indicating innocent ownership, satisfies the burden imposed by the statute.[31]

The circuit court's ruling of forfeiture was also based on the testimony of the expert on illegal drug trafficking:

> And what we have discovered from hearing the testimony of the expert is that when in patrolling the interstate, and I-94 particularly, that I-94 is a corridor for transporting drug monies westbound and drugs eastbound.
>
> * * *
>
> And on the number of stops with large amounts of money with very little exception, large amounts of money without drugs headed westbound and large amounts of drugs without money is headed eastbound. So, what this tells us is that the probability that this is a westbound transportation of drug money.
>
> Further, that more often than not rental cars are used for this purpose, and that there are frequent rental of vehicles from Detroit by the petitioner [claimant] for us. And that makes it more likely that she was transporting drug money.

Federal courts have held that evidence seized in a known drug corridor is probative in drug forfeiture cases. For example, in *United States v $87,375 in United States Currency,* 727 F Supp 155, 161 (D NJ, 1989), the district court held:

---

[31] See also *United States v Parcels of Land,* 903 F2d 36, 39-40 (CA 1, 1990) ("The sheer magnitude of Laliberte's expenditures supports an inference that his property acquisitions were funded with the proceeds of drug trafficking; Laliberte's millions of dollars in purchases far exceeded his reported average annual income of $27,690, and there was no other apparent legitimate source of money to account for this magnitude of expenditures. See, e.g., *United States v $ 250,000,* 808 F 2d [895,] 899 (CA 1, 1987) (noting the absence of any apparent legitimate sources of income that could account for the property sought to be forfeited.").

The fact that a large amount of money was being transported southward from New York through a well known drug corridor by a Colombian national who resides in Miami further supports the Government's showing of probable cause.[32] The reputation of an area for criminal activity may be relied on to support an inference of criminal conduct. See *United States v. Rickus*, 737 F.2d 360, 365 (3d Cir. 1984). The area where Mr. Camacho was stopped by Trooper Tomasello, along Route 40 in Salem County, New Jersey, carries such a volume of drug traffic that it is commonly known as "Cocaine Alley." See *United States v. $ 33,500,* Civil Action No. 86-3348(MHC) (D.N.J. Aug. 17, 1988); United States v. $ 32,310, Civil Action No. 85-4004(MHC) (D.N.J. June 23, 1988). Colombia is a known major source of drugs which eventually get trafficked throughout the United States, and Miami is a known center for drug trafficking and money laundering. *United States v. $ 364,960*, 661 F.2d at 323-24; *United States v $ 5,644,540*, 799 F.2d 1357, 1363 (9th Cir 1986). We are entitled to take such common experience considerations into account. *United States v. $ 319,820*, 620 F. Supp. [1470, 1477 (ND Ga, 1985)].

A claimant's explanation for the presence of large amounts of cash is also evaluated in drug forfeiture cases. Federal courts have held that a claimant's false statement is probative of drug activity. "[I]nconsistencies and contradictions are relevant in determining whether the government has met its burden in justifying

---

[32] The federal "probable cause" burden of proof has been replaced:

"Forfeiture proceedings commenced prior to the effective date of CAFRA [Civil Assist Forfeiture Reform Act] (August 23, 2000) applied a lesser standard of proof—probable cause. *See United States v. 5 S 351 Tuthill Road*, 233 F.3d 1017, 1023 (7th Cir. 2000) (CAFRA 'requires the government to prove the connection between the property to be forfeited and the drug activity by a preponderance of the evidence, rather than to prove merely probable cause to believe there is a connection.')." [*United States v Funds in the Amount of $30,670,* 403 F3d 448, 454 n 4 (2005).]

forfeiture."[33]  For example, in *United States v Funds in the Amount of $30,670,*[34] the claimant gave inconsistent testimony about the source of the $30,670 in cash contained in the his gym bag seized by drug enforcement agents.  In finding under the "totality of circumstances" that there was a preponderance of evidence supporting forfeiture, the Seventh Circuit Court of Appeals considered the inconsistency and unreliability of the claimant's testimony:

> Calhoun's [claimant's] explanations regarding his travel to Phoenix are suspect. On the day his cash was seized, Calhoun was traveling to Phoenix, a recognized source city for illegal narcotics. See, e.g., [*United States v*] *$22,474* [*in United States Currency*], 246 F.3d [1212] at 1216 [2001] ("Phoenix[] [is] a known source city for drugs."); cf. *United States v. Currency, U.S. $ 42,500.00*, 283 F.3d 977, 981 (9th Cir. 2002) (giving weight to fact that claimant was "traveling from New York to San Diego, well known source cities for drugs"); *United States v. $ 141,770.00 in U.S. Currency*, 157 F.3d 600, 604 (8th Cir. 1998) (giving weight to fact that claimant was traveling from California, "a drug source state"). He had made frequent trips to Phoenix—seven trips within two months, not three as he claimed. Calhoun alleged that he stayed at the same hotel each trip (at "55th and the expressway") but could not recall the hotel's name; subpoenaed travel records indicate that Calhoun did not stay at any hotel at "55th and the expressway." Yet he stayed in Phoenix at least 27 nights during the two months he had been traveling there (making his forgetfulness all the less credible). All of these inconsistencies are relevant in weighing whether the government has established its burden justifying forfeiture. See [*United States v*] *$ 242,484* [*in United States Currency*], 389 F.3d [1149, ] 1164 [(CA 11, 2004)] (finding it proper to consider claimant's inconsistent statements and changing stories in considering whether the government's burden is met); *$ 22,474*, 246 F.3d at 1217 ("[Claimant's] inconsistent statements about the money and his

---

[33] *United States v $159,880 in United States Currency,* 387 F Supp 2d 1000, 1015 (SD Iowa, 2005).

[34] 403 F3d 448 (CA 7, 2005).

reasons for being in Phoenix tended to support an inference that the money was drug related."); *United States v. $ 67,220.00 in U.S. Currency*, 957 F.2d 280, 286 (6th Cir. 1992) ("Misstatements are probative of possible criminal activity.") [*United States v Funds*, *supra* at 467.]

As was the case in *United States v Funds,* claimant here gave unreliable and inconsistent testimony about why she had $180,975 in cash in the trunk of her rental car.[35]   In addition, claimant's testimony that she intended to use the money to buy a house in Indianapolis was not credible.[36]   And while the dissent has

---

[35] While evidence of the money itself had been suppressed by the circuit court, the court allowed the prosecutor to question the claimant about the basis for its existence.   When asked about where the $180,975 in cash came from, claimant said it was her money and she got a little bit of it from a friend, Todd Fletcher. She was not sure how much she got from Fletcher, nor did she know from where Fletcher obtained the money.  She claimed that Fletcher gave it to her "throughout the years" and that she had been storing it in a "personal area."  With respect to the money's appearance in the trunk of the rental car, she denied ever putting it in the trunk or having any knowledge of it being placed in the trunk.  She claimed that the first time she observed the presence of the money was when she was stopped for speeding that day.

[36] Claimant initially stated that she "had plans" to get a rental car sometime around September 28, 2002, to go to Indianapolis to "get a house" and that before September 28, 2002, she had "very frequently" gone to look for a house in Indianapolis.  But when questioned about four instances before that date when she had rented cars, claimant could not remember on what date, if any, she would have used a rental car to go to Indianapolis.  Further, claimant admitted that she took no luggage, clothing, or overnight bags with her on this trip to Indianapolis.

Claimant first testified that she was going to Indianapolis to see her sister-in-law, Betty Smith, to look for a house, but she later testified that she was actually there to see her brother, Richard Smith.  When reminded of her earlier testimony about going to see Betty Smith to help her find a house, claimant stated, "Well, we had already got everything straight about the house."  Still later, claimant indicated that when she went to Indianapolis on September 28, she had already had contact with a realtor.  When asked the name of the agent, she said, "Sam."   When asked whether she had entered into a purchase agreement, her

(continued…)

26

suggested that if the cash subject to forfeiture is removed from consideration, claimant's behavior appears "ordinary and innocent," *post* at 16, we remind the dissent that the circuit court had the benefit of judging the credibility of the claimant's testimony on the stand juxtaposed with the testimony of the illegal drug trafficking expert. Given claimant's inability to provide a credible explanation for how she came to have such a large amount of cash in a rental car, while traveling along a known drug trafficking corridor, and given her unexplained and repeated history of using rental cars, as well as the absence of evidence supporting her explanation for the intended use of such a large amount of cash, the circuit court could properly find that her behavior was not "ordinary and innocent."

Under such circumstances, it is not surprising that ultimately the circuit court found claimant's testimony unpersuasive:

> Her [claimant's] testimony [is] that she was transporting the money to buy a house and in the Indianapolis area, that there is no buy/sell agreement. There is no documentation. There is no substantiation of that. Her testimony about the money and how it

---

(…continued)
response was "Entered into a purchase agreement?" After the prosecutor explained what the agreement was, claimant said that she had not signed a purchase agreement but had settled on a price with "Sam" for "like 180 something." Claimant could not say when she would have negotiated this price with the agent and when asked the name of the agent's office, she stated that it was "Morgan something."

When questioned about her use of rental cars on July 5, July 20, July 27, September 21, 2002, and October 18, 2002, she could not say what she had used the cars for, nor where she had driven, nor why the respective mileage amounts for each date were 787 miles, 558 miles, 647 miles, 125 miles, and 860 miles.

happened to get into the car was changing and ambiguous, and very honestly not very credible. So when all gets said and done, I don't give much credibility to her testimony given the contradictions involved.

In deciding whether there is sufficient evidence to support a ruling of drug forfeiture, the Eleventh Circuit Court of Appeals has held that "we look to the totality of circumstances and do not try to pick them off, one by one, by conjuring up some alternative hypothesis of innocence to explain each circumstance in isolation."[37]

CONCLUSION

We conclude that the exclusionary rule was not meant to immunize illegally seized property from a subsequent civil forfeiture proceeding in which the seized property is the subject of the proceeding. We hold that, in accord with *In re Forfeiture of United States Currency* and MCL 333.7521, as long as the forfeiture can be established by a preponderance of untainted evidence, the forfeiture is valid. Consequently, it was appropriate for the circuit court to proceed with the forfeiture hearing as long as the illegally seized currency was excluded from evidence. As summarized by the Court of Appeals in its opinion affirming the circuit court, a preponderance of independent evidence supported the forfeiture:

> At trial, expert testimony was presented that I-94 is a primary "pipeline" for narcotic sales. Couriers carry large sums of money

---

[37] *United States v $242,484, supra* at 1167.

west on I-94 to purchase drugs in Chicago. The drugs are then transported and delivered east to Detroit and other eastern cities. Cash is the customary method of payment; cars are the most common form of conveyance; couriers frequently use rental cars; and the trips are quick. The evidence indicated that claimant was driving a rental car. Further, in the three-months before the stop, claimant had rented at least four cars for three days each, placed several hundred miles on each car, and did not recall where she had driven. Additionally, her tax records reflected that from 1998 through 2001, claimant generally earned between $ 4,000 and $5,000 a year. An expert opined that the large amount of cash claimant was transporting west on I-94 was consistent with claimant's being a courier and intending to purchase drugs. [*In re Forfeiture of $180,975,* slip op at 2.]

Reviewing the circuit court's findings, under the "totality of circumstances," we agree with the Court of Appeals that the circuit court did not clearly err in determining that although the money had been illegally seized, there was a preponderance of untainted evidence to support a civil forfeiture pursuant to MCL 333.7521(1)(f).

Accordingly, we affirm the Court of Appeals judgment below and we further conclude that the Court of Appeals in *In re Forfeiture of United States Currency* reached the correct result.

Elizabeth A. Weaver
Clifford W. Taylor
Maura D. Corrigan
Robert P. Young, Jr.

29

STATE OF MICHIGAN

SUPREME COURT

IN RE FORFEITURE OF $180,975

_____

PEOPLE OF THE STATE OF MICHIGAN,
        Plaintiff-Appellee,

v                                                                        No. 127983

$180,975 IN UNITED STATES
CURRENCY,
        Defendant,

and
TAMIKA SHANTE SMITH
        Claimant-Appellant
and
TODD FITZGERALD FLETCHER,
        Claimant.


_____

MARKMAN, J. (*dissenting*).

I respectfully dissent and would reverse the judgment of the Court of Appeals and vacate the forfeiture award. I agree with the majority that: (a) illegally seized property may not be relied on to sustain its own forfeiture; (b) illegally seized property may only be offered into evidence for the limited purpose of establishing its existence and the court's jurisdiction over it; (c) illegally seized property may only be forfeited if such forfeiture is supported by a preponderance

of the untainted evidence; and (d) therefore, the principles of law set forth in *In re Forfeiture of United States Currency*, 166 Mich App 81; 420 NW2d 131 (1988), and *United States v $639,558 in United States Currency*, 293 US App DC 384; 955 F2d 712 (1992), are correct. Nonetheless, I disagree with the result reached by the majority because it fails to apply these rules.

In particular, the majority redefines the proposition that illegally seized property may only be offered into evidence for the purpose of establishing its existence and the court's jurisdiction over it. Although evidence of such property was suppressed here, the majority improperly relies on a variety of "surrounding circumstances" and "implications" concerning the illegally seized property (in this case, money) to support the forfeiture award. Absent consideration of these "circumstances" and "implications," the remaining untainted evidence would clearly be insufficient to support the forfeiture. By these means, the majority seeks to make painless the suppression of evidence by rendering it largely irrelevant; in the end, the suppression constitutes a mere inconvenience that has little effect on the government's ability to use the illegally seized property as evidence.

It is important to note at the outset that the applicability of the exclusionary rule to forfeiture proceedings in general, and the propriety of the trial court's suppression of the $180,975 in particular, are *not* at issue here. The prosecutor has not chosen to appeal either of these decisions. Therefore, we must assume for purposes of this appeal that the suppression of evidence was constitutionally

2

required.  The *only* issues on appeal are whether the suppressed evidence may be used to support the forfeiture, and whether, absent this evidence, there is sufficient untainted evidence to support the forfeiture.

## I. FACTS AND PROCEDURAL HISTORY

Claimant Tamika Smith was stopped for speeding while traveling west on I-94 in a rental car with her two children and an adult male named Todd F. Fletcher.  A Law Enforcement Information Network (LEIN) search revealed that Smith's driver's license had been suspended.  After the state trooper ticketed Smith for speeding and driving on a suspended license, the trooper searched the trunk of the car without Smith's consent and discovered a backpack filled with $180,975.

The prosecutor subsequently filed the instant complaint for forfeiture of the $180,975, pursuant to MCL 333.7521(1)(f).[1]  The trial court granted Smith's

---

[1] MCL 333.7521(1)(f) provides:

The following property is subject to forfeiture:

\* \* \*

(f) Any thing of value that is furnished or intended to be furnished in exchange for a controlled substance, an imitation controlled substance, or other drug in violation of this article that is traceable to an exchange for a controlled substance, an imitation controlled substance, or other drug in violation of this article or that is used or intended to be used to facilitate any violation of this article including, but not limited to, money, negotiable instruments, or securities.  To the extent of the interest of an owner, a thing of value is not subject to forfeiture under this subdivision by reason of any act or omission that is established by the owner of the item to have been committed or omitted without the owner's knowledge or

(continued…)

3

motion to suppress evidence of the money on the basis that it had been seized pursuant to an illegal search, and the prosecutor did not appeal. Following a bench trial, the trial court entered a judgment of forfeiture, finding that, even without the illegally seized evidence, the prosecutor had established that the money was intended to purchase illicit drugs. The court based its decision on the fact that: (1) Smith had "a very large amount of money"; (2) Smith's income peaked at $14,000 a year and she was usually making $4,000 to $5,000 a year; (3) westbound I-94 is a known corridor for transporting drug monies from Detroit to Chicago; (4) rental cars are frequently used to transport drugs; and (5) Smith had frequently rented cars in Detroit. The Court of Appeals affirmed, further noting that "an expert [witness] opined that the large amount of cash claimant was transporting west on I-94 was consistent with claimant's being a courier and intending to purchase drugs." Unpublished opinion per curiam of the Court of Appeals, issued December 28, 2004 (Docket No. 249699), slip op at 2.

## II. ANALYSIS

### A. EXCLUSIONARY RULE IN FORFEITURE PROCEEDINGS

The exclusionary rule generally bars the introduction into evidence of materials seized and observations made during an unconstitutional search. *Weeks*

---

(...continued)

> consent. Any money that is found in close proximity to any property that is subject to forfeiture under subdivision (a), (b), (c), (d), or (e) is presumed to be subject to forfeiture under this subdivision. This presumption may be rebutted by clear and convincing evidence.

4

*v United States*, 232 US 383; 34 S Ct 341; 58 L Ed 652 (1914); *Silverman v United States*, 365 US 505; 81 S Ct 679; 5 L Ed 2d 734 (1961); see also *People v LoCicero*, 453 Mich 496, 508; 556 NW2d 498 (1996) ("The exclusionary rule forbids the use of direct and indirect evidence acquired from governmental misconduct, such as evidence from an illegal police search.");[2] *Mapp v Ohio*, 367 US 643, 648; 81 S Ct 1684; 6 L Ed 2d 1081 (1961) ("'[T]he Fourth Amendment barred the use of evidence secured through an illegal search and seizure.'") (Citation omitted.)

Black's Law Dictionary (6th ed), p 563, defines "exclusion" of evidence as "[t]he action by the trial judge in which he excludes from consideration by the trier of fact whatever he rules is not admissible as evidence." To "exclude" is defined by *Random House Webster's College Dictionary* (1997) as "1. to shut or keep out; prevent entrance of. 2. to shut out from consideration, privilege, etc. 3. to expel and keep out; thrust out; eject." "Suppression of evidence" is defined as "[t]he ruling of a trial judge to the effect that evidence sought to be admitted should be excluded because it was illegally acquired," and to "suppress evidence" as "to keep it from being used in a trial by showing that it was either gathered illegally or

---

[2] The majority argues that *LoCicero* is not applicable to this case, because *LoCicero* addressed the exclusionary rule in the context of a criminal proceeding, rather than a civil forfeiture proceeding. I fail to see the slightest relevance in this observation. The fact remains that the evidence in this case *was* suppressed and that the prosecutor did not challenge this suppression. The only question before this Court concerns the *impact* of that suppression, an impact that our decision in *LoCicero* accurately described.

5

that it is irrelevant."  Black's Law Dictionary (6th ed), p 1440.  To "suppress" is defined as "to do away with by or as if by authority; abolish; stop (a practice, custom, etc.); to withhold from disclosure or publication (evidence, a book, etc.); to keep (a thought, memory, etc.) out of conscious awareness."  *Random House Webster's College Dictionary* (1997).  Thus, once suppressed or excluded, evidence should generally be treated as non-existent and withheld from disclosure and consideration in legal proceedings, except under very specifically delineated exceptions.  See, e.g., *United States v Havens*, 446 US 620; 100 S Ct 1912; 64 L Ed 2d 559 (1980) (although illegally seized evidence is inadmissible as substantive evidence, it is admissible for impeachment purposes); *United States v Calandra*, 414 US 338; 94 S Ct 613; 38 L Ed 2d 561 (1974) (illegally seized evidence is admissible in grand jury proceedings).

As the majority correctly notes, in a civil forfeiture proceeding where the illegally seized property is itself the "defendant," such property is not entirely excluded from the forfeiture proceedings, but rather, "may be offered into evidence for the limited purpose of establishing its existence, and the court's *in rem* jurisdiction over it."  *$639,558*, *supra* at 715 n 5.  In other words, the excluded property may be identified as the defendant in a forfeiture proceeding, *Immigration & Naturalization Service v Lopez-Mendoza*, 468 US 1032, 1039-1040; 104 S Ct 3479; 82 L Ed 2d 778 (1984), but may not be "relied upon to sustain a forfeiture."  *One 1958 Plymouth Sedan v Pennsylvania*, 380 US 693, 698; 85 S Ct 1246; 14 L Ed 2d 170 (1965); *$639,558*, *supra* at 715 n 5.  Despite its

6

exclusion, the illegally seized property remains subject to forfeiture under MCL 333.7521 if the forfeiture can be supported by a preponderance of other, untainted evidence. See *In re Forfeiture of United States Currency*, *supra* at 89; *People v United States Currency*, 158 Mich App 126, 130; 404 NW2d 634 (1986); *United States v "Monkey," a Fishing Vessel*, 725 F2d 1007, 1012 (CA 5, 1984).[3]

### B. MAJORITY'S REDEFINITION OF EXCLUSIONARY RULE

While the majority purports to apply this law, it effectively redefines the law to avoid the necessary consequences of the exclusionary rule. It does this through its central assertions that the use of suppressed evidence "should be limited to the circumstances surrounding its existence," *ante* at 16, that the court must not "turn a blind eye to the conclusions one reaches when considering all of the circumstances surrounding [the suppressed evidence's] existence and its implications," *ante* at 18,[4] and that "while the court may not consider the specific

---

[3] As the majority correctly notes, the Court of Appeals in *In re Forfeiture of United States Currency* relied on an erroneous standard of proof; the correct burden of proof is "preponderance of evidence," not "probable cause." See *People v United States Currency*, 158 Mich App 126, 130; 404 NW2d 634 (1986).

[4] In support of this assertion, the majority cites *United States v $242,484 in United States Currency*, 389 F3d 1149, 1167 (CA 11, 2004), in which the federal court stated, "[W]e do not take an academic or theoretical approach. Instead, we eschew clinical detachment and use a common sense view to the realities of normal life." Whatever a "common sense view" may suggest to the majority, this statement is taken entirely out of context. Unlike the instant case, *$242,484 in United States Currency* involved a lawful search after which the evidence of money was not suppressed. The court there merely addressed the extent to which evidence of money could be considered for the purposes of establishing probable cause that the money was related to illegal drugs. While the federal court's

(continued…)

7

physical characteristics of the item itself, the court can consider evidence presented in relation to the fact of the item's existence, for example the fact that claimant's testimony about the money itself is questionable," *ante* at 19.[5]  The majority also effectively redefines this law through its conclusion that "the court can consider the reliability of the claimant's testimony concerning the money's origin, its existence in her rental car, its intended purpose, the amount of the money in relation to her reported income, . . . and any other circumstantial factors not specifically related to the physical characteristics of the money," *ante* at 19, and that "the trial court could properly consider the implications of the presence of such a large amount of cash in the vehicle."  *Ante* at 20-21.  Apparently, all that the majority would exclude from consideration is the color of the currency and the Presidents who are pictured on it.

However, as noted, suppressed evidence is admissible only to "establish its existence," not "the *circumstances* surrounding its existence" or their "implications."  While we may consider the fact that the excluded property subject to forfeiture *exists*, as a consequence of the suppression, we may not rely on *any*

_____

(…continued)
proposition is commonplace, the majority's application of this proposition is extraordinary.

[5] It is not clear whether the majority is suggesting that the suppressed evidence of money was properly admitted because it was used to impeach Smith. The majority simply utters this assertion without any apparent context or purpose. However, even if this evidence *were* used for such a purpose, it was *also* used by
(continued…)

8

*other* information relating to this property, such as the place where it was found, its value, its physical characteristics, or any explanation regarding its origin or intended use, to sustain the property's forfeiture. The "establishment of its existence" exception to suppression is required to allow identification of the defendant property and to justify the court's jurisdiction over the property. Because suppressed evidence is inadmissible for broader purposes, *LoCicero*, *supra* at 508, the majority's new rule, which allows the "surrounding circumstances" of the illegally seized property and their "implications" to be considered, constitutes an incorrect reading of the law.[6]

In avoiding the necessary consequences of the exclusionary rule, the trial court, the Court of Appeals, and now the majority have each made increasing use of evidence that must be considered nonexistent. The trial court based its forfeiture, in part, on the fact that Smith was transporting "a very large amount of

---

(…continued)
the trial court, the Court of Appeals, and the majority for obvious non-impeachment purposes to affirmatively support a finding of forfeiture.

[6] Moreover, the majority fails to apply its own rule in an understandable or consistent manner. On the one hand, that the money was seized in a rental car driven by a low-income driver in a known drug corridor are all circumstances relied on by the majority to sustain the present forfeiture. *Ante* at 20-28. On the other hand, the majority states that "the state should not be permitted to exploit the search by asking how the money was packaged, or whether evidence of drugs was detected on the money." *Ante* at 16. However, the latter are also "circumstances surrounding the property's existence." I fail to understand, and the majority does not explain, the basis for differentiating those circumstances that the majority would allow to be considered and those circumstances that it would not. What are the standards for distinguishing between these classes of "circumstances"?

9

money," which was unlikely to be the product of her legitimate income, and that Smith had not given a credible explanation for the presence of the money in the trunk of her rental car. The Court of Appeals noted that "[a]n expert opined that the large amount of cash claimant was transporting west on I-94 was consistent with claimant's being a courier and intending to purchase drugs." Slip op at 2. The majority quotes with approval both the trial court and Court of Appeals decisions, and concludes that "while the cash itself was excluded from evidence, the trial court could properly consider the implications of the presence of such a large amount of cash in the vehicle." *Ante* at 20-21.

### C. MAJORITY'S RELIANCE ON IRRELEVANT CASES

I cannot recall an opinion of this Court that employs caselaw as much to obscure as to illuminate. The several dozen cases cited in the majority opinion, with a single exception, either stand for undisputed propositions of law or are irrelevant to the question whether the "surrounding circumstances" and "implications" of illegally seized property may be considered to support a forfeiture. With that single exception, the cases cited by the majority can fairly be characterized as standing for three distinct propositions of law-- none of which is in dispute and none of which actually supports the rule announced by the majority. These propositions of law may be stated as follows: (1) illegally seized property may only be offered into evidence for the limited purpose of establishing its existence and the court's jurisdiction over it; (2) illegally seized property may still be forfeited, as long as the forfeiture is supported by sufficient untainted evidence;

and (3) the circumstances surrounding the *lawful* seizure of property, such as the amount or value of the property, a claimant's lack of legitimate income, the place where the property was seized, and a claimant's false statements, can be relied on to support a forfeiture.

There is no dispute, for example, that illegally seized property may be offered into evidence for the limited purpose of establishing its existence and the court's jurisdiction. Moreover, there is no dispute that illegally seized property may be forfeited on the basis of other, lawfully obtained evidence. However, the cases cited by the majority in support of these commonplace propositions of law do *not* speak to the permissibility of allowing consideration of the "surrounding circumstances" or "implications" of illegally seized property. From a commonplace proposition, the majority proceeds to an invented proposition. Indeed, some of the cases cited by the majority are not merely irrelevant, but support the opposite of the majority's new rule. For example, in *$639,558,* evidence of a positive drug-dog sniff of the claimant's luggage and money seized from his luggage were suppressed because of an illegal search. With that evidence suppressed, the only remaining untainted evidence was the fact that the claimant was engaged in a "suspicious" form of travel and that he was departing from a city known to be a source of drugs-- evidence that bears a striking similarity to the untainted evidence in the instant case. Solely on the basis of the untainted

11

evidence, the prosecutor conceded,[7] and the District of Columbia Circuit Court of Appeals did not dispute, that there was insufficient evidence remaining to support the forfeiture. In other words, the "surrounding circumstances" of the illegally seized money, such as the fact that the claimant was carrying a "large amount of money," were not considered and, therefore, the forfeiture proceeding was dismissed. Likewise, in *"Monkey,"* the Fifth Circuit Court of Appeals did not rely on the "surrounding circumstances" of the evidence illegally seized from the fishing vessel, but rather held that a forfeiture was supported *in spite of* the suppression on the basis of inferences resulting from the claimant's criminal trial and certain admissions made by the claimant in his appellate brief.

Finally, the majority purports to set forth a catalog of cases supporting its view that the "surrounding circumstances" and "implications" of illegally seized property may be considered to support a forfeiture. However, each of these cases, with, as already noted, a single exception, involved *legal* searches and seizures. Once more, there is no dispute that evidence drawn from *lawfully* seized property is fully admissible in support of a forfeiture. *Any* information concerning such evidence, including their "surrounding circumstances" and "implications," was admissible in support of their forfeiture. Most certainly, these cases do not stand

---

[7] Apparently, the prosecutor in *$639,558,* unlike the majority, understood that "suppressed" means "suppressed," and "excluded" means "excluded," and thus recognized that the "surrounding circumstances" or "implications" of illegally seized property could not be used to support its forfeiture.

12

for the majority's proposition that unlawfully obtained evidence may be relied on to sustain its own forfeiture.[8]

Once the majority's irrelevant caselaw is set aside, there is not much left. All that remains is a single trial court decision containing not a single sentence of reasoning and not a single word of analysis, indeed a decision subsequently rendered a nullity by the appellate court. *United States v $22,287 in United States Currency*, 520 F Supp 675, 680 (ED Mich, 1981).[9]  In $22,287, the court noted that $22,287, which had been excluded, constituted "an unusually large amount of cash for any individual to have on hand, [and] is very close to the price of 'nineteen five' ($ 19,500.00) noted by Johnny [an alleged drug dealer] as the cost of a 'lb' (pound of heroin)."  As a result, the court relied on this excluded evidence, as well as other untainted evidence, to grant the forfeiture.  The court reached this conclusion with absolutely *no* analysis justifying its reliance on the suppressed evidence.  Moreover, the persuasive force of this case-- already minimal to begin with given its absence of analysis-- is further diminished, if not

---

[8] The majority responds that these cases are "relevant" because they relate to the prosecutor's belated argument that the exclusionary rule does not apply to a civil forfeiture proceeding.  *Ante* at 20 n 29.  However, the issue of the applicability of the exclusionary rule to a civil forfeiture proceeding is *not* before this Court; the *only* issue is whether the suppressed evidence may be used to support its own forfeiture.  Thus, the cases strewn throughout this opinion by the majority may be "relevant," but only to an irrelevant issue.

[9] Given that this Court is not bound by the decisions of lower federal courts, perhaps the majority might wish to share what it is they find most persuasive in the district court's analysis.

13

altogether nullified, by the fact that the Sixth Circuit Court of Appeals subsequently determined that no illegal search had occurred and therefore rejected *any* exclusion of evidence. 709 F2d 442 (CA 6, 1983).[10]

### D. PROPER APPLICATION OF EXCLUSIONARY RULE

The majority acknowledges that the *only* purpose for which excluded evidence may be used in the instant forfeiture action is to establish its "existence" and the court's jurisdiction over it, but then concludes that other information regarding the excluded property is admissible. However, under traditional understandings of what it means for property to be "suppressed," the trial court could not rely on the fact that Smith was actually carrying money in the car, that the money was seized in a known drug corridor, that the amount of money was substantial, that Smith did not have the means to legitimately possess this amount of money, or that Smith could not give a credible explanation about why she was carrying this amount of money with her.[11] Under the rule of *In re Forfeiture of*

---

[10] That is, because the trial court erred in excluding evidence, the Sixth Circuit had no need to consider whether the trial court also erred in relying on excluded evidence; concomitantly, if the trial court had not erred, it would also have had no need to rely on excluded evidence.

[11] The majority argues that this dissent's "reasoning has been rejected" in *United States v $493,850 in United States Currency,* 2006 US Dist LEXIS 2370. *Ante* at 16. In that case, the "[c]laimants argue[d] [that] the Court may not even acknowledge that one of the defendants is money but rather must deal with the defendant money as if it were a 'widget.'" *$493,850 in United States Currency*, *supra* at 15. The court held that it

> does not believe that exclusion of the cash means the Court must consider the defendant cash as a "widget." The Court believes it can

(continued…)

14

*United States Currency*, except for its mere existence, *all* other evidence pertaining to the money is deemed inadmissible; no matter how indispensable this evidence, the court may not rely on it in support of a forfeiture.

Absent the suppressed evidence, the evidence in this case is clearly insufficient to support forfeiture by a preponderance of the evidence. Rather, the untainted evidence-- what is left after the illegally seized money has been excluded from consideration, as it must be-- supports two points of fact: (1) Smith, who has a very low income, was driving a rental car to Chicago for the fifth time in three months; and (2) drug couriers frequently carry large sums of money from Detroit to Chicago in rental cars. However, absent the evidence that Smith was actually carrying a large sum of money in a drug corridor at the time of the stop, there is simply no logical connection or nexus between these propositions. Such a

---

(…continued)

> still take notice of the fact that the defendant is cash. This is obviously stated in the caption of the case. Perhaps the denominations making up the amount and the actual money itself cannot be put into evidence. However, there is no way for the Government to show that a "widget" is the product of a drug transaction and, therefore, the Court does not believe it has to disregard the fact that one of the defendants is cash. [*Id.* at 15-16.]

*$493,850* merely stands for the proposition that the illegally seized cash must be identified as what it is, i.e., that the defendant's identity need not be obscured or hidden. Moreover, the trial court did not rely on the fact of the money, or any inferences drawn from the amount of money identified as the defendant, in order to support the forfeiture. Rather, it relied exclusively on untainted evidence, including the facts that the claimants met on several occasions with known drug dealers, were negotiating with the drug dealer on price, and the vehicle that the

(continued…)

15

logical connection or nexus is simply severed by the exclusionary rule. What is left is that Smith, a person of low income, was a frequent traveler between Detroit and Chicago, a well-recognized drug corridor, in a rental car. These circumstances undoubtedly describe many persons who are not involved in the drug trade, and they describe what may be understood as entirely innocent behavior. It is only when the money is taken into consideration that this ordinary and innocent behavior is transformed into something less benign.[12] It is only when the money is taken into consideration that there is some semblance of a "drug courier profile" that emerges. Yet, the money cannot be taken into consideration because it has been suppressed and because the prosecutor has chosen not to challenge this suppression.

---

(…continued)

government sought to forfeit was observed by the police at the drug dealer's home. Nothing in *$493,850* refutes what is set forth in this dissent.

[12] The majority argues that Smith's "behavior was not 'ordinary and innocent'" if we take into consideration "claimant's inability to provide a credible explanation for how she came to have such a large amount of cash in a rental car" and "the absence of evidence supporting her explanation for the intended use of such a large quantity of cash," *ante* at 27, "juxtaposed with the testimony of the illegal drug trafficking expert." *Id.* Indeed, this is quite true *if* we are allowed to consider these circumstances. But that, of course, is the nub of the question. *Are* we allowed to consider these circumstances under the exclusionary rule? I believe not because such evidence has been made non-existent under the rule for almost all purposes. Because the majority evaluates the presence of the money in Smith's car, the amount of the money, and the source and use of the money, it is clearly acting beyond the scope of the exclusionary rule. Credible or not, the trial court could not rely on this evidence to establish that the money was connected to an illegal drug activity. Absent such evidence, Smith resembles any other person who travels from Detroit to Chicago in a rental car.

16

Moreover, Smith made no admissions of any kind, no evidence arose out of any criminal proceedings against her (for there were no such proceedings), Smith was not traveling with a known drug courier, and there was no witness testimony connecting Smith and large amounts of money, or otherwise indicating her involvement in drug trafficking. Accordingly, the untainted evidence is insufficient to support the forfeiture under MCL 333.7521(1)(f).

## III. OBSERVATIONS

This Court has previously acknowledged the "very high cost of the exclusionary rule." *People v Goldston*, 470 Mich 523, 540; 682 NW2d 479 (2004); see also *People v Hawkins*, 468 Mich 488, 500 n 9; 668 NW2d 602 (2003). When suppression occurs, the prosecutor on behalf of the people is deprived of essential evidence in the presentation of his or her case, the fact-finder is denied access to potentially relevant facts and information, the justice system is impeded in its ability to discern the truth about wrongdoing, and the people must suffer within their communities persons who have harmed others and gone unpunished for their conduct. As Justice Corrigan has observed, by denying the fact-finder access to evidence, the exclusionary rule "impedes, rather than promotes, the truth-seeking function of the judiciary and thereby hinders public confidence in the integrity of the judicial process." *Goldston*, *supra* at 540 n 9. The criminal trial regrettably must proceed "as though the dead body in the basement did not exist, as though the illegal firearm under the sofa was never

17

really there, and as though the incendiary materials in the garage were merely a figment of one's imagination." *Goldston*, *supra* at 545 (Markman, J., concurring).

Given that there is no more important function of government than ensuring domestic tranquility and protecting people from violent predators, the costs of the exclusionary rule are extraordinarily high. I do not favor this rule, for I do not believe that it is required by the constitution. Nonetheless, the United States Supreme Court has mandated this rule and evidence that is illegally seized must be suppressed. And "suppressed" means "suppressed"; it does not mean that courts may characterize evidence as "suppressed" while, in fact, relying upon that evidence to support its own forfeiture. While I too might wish that suppression of evidence could be less painful to the justice system, it is precisely because of its painfulness that I, as well as others in the majority, have been so concerned about the rule for so long. Where evidence has been illegally obtained, the rule of suppression requires that the legal system be deprived of even the most credible evidence, including whatever "implications" can be drawn from its "surrounding circumstances." The majority alleviates the costs of suppression, but only by transforming suppression into something other than what it must be.

## IV. Conclusion

On the basis of MCL 333.7521, *In re Forfeiture of United States Currency*, and the traditional meaning of "suppression," I would hold that suppressed evidence is admissible in a civil forfeiture proceeding for the limited purpose of establishing its existence as the defendant and the court's jurisdiction over the

18

property, but that such evidence may not properly be relied on in a substantive fashion to sustain a forfeiture, even when this is done purportedly to assess the "circumstances surrounding the existence" of the evidence, and the "implications" of the evidence. Rather, the trial court must determine whether legally seized evidence, i.e., untainted evidence, is sufficient to sustain the forfeiture. Because the untainted evidence here was not sufficient to support the forfeiture, I would reverse the judgment of the Court of Appeals and vacate the judgment of forfeiture.

Stephen J. Markman

STATE OF MICHIGAN

SUPREME COURT

IN RE FORFEITURE OF $180,975

_____

PEOPLE OF THE STATE OF MICHIGAN
          Plaintiff-Appellee,

v                                                                      No. 127983

$180,975 IN UNITED STATES
CURRENCY,
          Defendant,

and
TAMIKA SHANTE SMITH,
          Claimant-Appellant,

and
TODD FITZGERALD FLETCHER,
          Claimant.

_____

CAVANAGH, J. (*dissenting*).

     I concur with parts I, II, and IV of Justice Markman's dissenting opinion.

                                   Michael F. Cavanagh

STATE OF MICHIGAN

SUPREME COURT

IN RE FORFEITURE OF $180,975

_____

PEOPLE OF THE STATE OF MICHIGAN
          Plaintiff-Appellee,

v                                         No. 127983

$180,975 IN UNITED STATES
CURRENCY,
          Defendant,
and
TAMIKA SHANTE SMITH,
          Claimant-Appellant,
and
TODD FITZGERALD FLETCHER,
          Claimant.

_____

KELLY, J. (*dissenting*).

I agree with Justice Markman's conclusion and join all but part III of his opinion. I write separately to note that *One 1958 Plymouth Sedan v Pennsylvania*[1] is still valid and binding precedent of the United States Supreme Court. While the majority recognizes this point, it goes out of its way to make the argument that the underpinnings of that decision have been weakened. The cases cited by the majority in that regard are of no consequence in deciding whether *One 1958 Plymouth Sedan* is still good law. The Supreme Court has not overruled *One 1958*

_____

[1] 380 US 693; 85 S Ct 1246; 14 L Ed 2d 170 (1965).

*Plymouth Sedan*. In fact, that Court continues to recognize its viability. E.g., *United States v James Daniel Good Real Prop*, 510 US 43, 49; 114 S Ct 492; 126 L Ed 2d 490 (1993) ("the exclusionary rule applies to civil forfeiture"); *Austin v United States*, 509 US 602, 608 n 4; 113 S Ct 2801; 125 L Ed 2d 488 (1993) ("the Fourth Amendment's protection against unreasonable searches and seizures applies in forfeiture proceedings"). Therefore, this Court, like every court in the country, is bound by that decision unless the United States Supreme Court decides to overrule it.

Marilyn Kelly